1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

### FRESNO DIVISION

11
12

TONY EUGENE SAFFOLD,

CASE NO. 1:07-CV-01120-H-CAB (HC)

13

Petitioner,

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

vs.
14

K. Mendoza-Powers, Warden,
15

Defendant.
16

17    On August 2, 2007, Tony Eugene Saffold ("Petitioner"), a California prisoner

18 proceeding *pro se* and *in forma pauperis*, filed this Petition for Writ of Habeas Corpus with the

19 United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 2254.

20 (Doc. No. 1.) On April 29, 2008, Respondent filed his Answer. (Doc. No. 17.) Petitioner filed

21 a Traverse on May 19, 2008. (Doc. No. 18.) On November 25, 2008, the Eastern District

22 reassigned the case to the Southern District for review. (Doc. No. 20.)

23    For the reasons below, the Court DENIES the Petition for Writ of Habeas Corpus.

24 ///
25 ///
26 ///
27 ///
28 ///

**Background**

**A.      Procedural History.**

On April 3, 1990, Petitioner was convicted by a jury of first-degree murder, robbery with a firearm, assault with a firearm, and use of a firearm, in violation of Cal. Penal Code §§ 187, 211, 12022.5, and 245(a)(2).  (Doc. No. 1 at 1.)  On July 9, 1990, Petitioner was sentenced to 25 years to life with possibility of parole.  (Doc. No. 1 at 18.)  While Petitioner was facing the death penalty, the jury did not find the special circumstance that Petitioner had intent to kill. (Doc. No. 1, App. A.)  Petitioner appealed his conviction to the California Court of Appeal, which affirmed the conviction on January 27, 1992.  (Doc. No. 1 at 2.)  The California Supreme Court denied direct review on April 20, 1992.  (Doc. No. 1 at 2.)  Petitioner then filed a writ of habeas corpus with the San Joaquin County Superior Court, which denied the petition on December 5, 2006.  (Doc. No. 1 at 3.)  The California Court of Appeal denied the petition on February 1, 2007.  (Doc. No. 1 at 3.)  The California Supreme Court similarly denied review. Respondent concedes that Petitioner filed the present Petition in a timely manner and has exhausted all state administrative remedies.  (Doc. No. 17 at 3.)

The Petition alleges that the Parole Board violated Petitioner's due process rights because its decision to deny parole was not supported by a preponderance of the evidence, therefore making the decision arbitrary and capricious, because Petitioner has a presumptive right to a parole release date.  (Doc. No. 1 at 4.)  Petitioner contends that basing a denial of parole on factors such as the commitment offense and a previous criminal record of escalating crime violates his due process rights because those past factors can never change, thus effectively changing his life sentence with parole into a life sentence without parole.  (Doc. No. 1 at 27-28.)

Additionally, the Petition alleges that the Parole Board violated Petitioner's due process rights when it failed to timely schedule his first parole hearing one year prior to Petitioner's minimum eligible parole release date pursuant to Cal. Penal Code § 3041(a).  (Doc. No. 1 at 4.)

///

///

1 **Discussion**

2 **A.     Standard of Review.**

3        The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28

4 U.S.C. § 2254(d) to provide the following standard of review applicable to state court decisions:

5              (d) An application for a writ of habeas corpus on behalf of a person in

6              custody pursuant to the judgment of a State court shall not be granted with

7              respect to any claim that was adjudicated on the merits in State court

8              proceedings unless the adjudication of the claim–

9                     (1)  resulted in a decision that was contrary to, or involved an

10                    unreasonable application of, clearly established Federal law, as

11                    determined by the Supreme Court of the United States; or

12                    (2)  resulted in a decision that was based on an unreasonable

13                    determination of the facts in light of the evidence presented in the

14                    State court proceedings.

15 28 U.S.C. § 2254(d).

16        For Petitioner to obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1)

17 or § 2254(d)(2).  The United States Supreme Court has stated that a federal court may grant

18 habeas relief under the "contrary to" clause of § 2254(d)(1) if the state court either (1) "arrives

19 at a conclusion opposite to that reached by [the United States Supreme Court] on a question of

20 law," or (2) "decides a case differently than [the United States Supreme Court] has on a set of

21 materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 403 (2000).

22        A federal court may grant habeas relief under the "unreasonable application" clause of

23 § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the United

24 States Supreme Court's] decisions but unreasonably applies that principle to the facts of the

25 prisoner's case."  Id. at 412-13.  "Unreasonable application" must be objectively unreasonable

26 to the extent that the state court decision is more than merely incorrect or erroneous.  Lockyer

27 v. Andrade, 538 U.S. 63, 75 (2003).

28        Moreover, even if a state court decision is contrary to United States Supreme Court

1  precedent or rests on an unreasonable determination of facts in light of the evidence, Petitioner

2  must show that such error in the state court's ruling caused substantial or injurious prejudice.

3  See Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619,

4  637-38 (1993)).  The state court's factual determinations are presumed to be correct and the

5  petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28

6  U.S.C. § 2254(e)(1).  Because AEDPA creates a highly deferential standard towards state court

7  rulings, state court decisions should be given the benefit of the doubt.  Womack v. Del Papa,

8  497 F.3d 998, 1001 (9th Cir. 2007).

9  **B.     Determination of Unsuitability for Parole.**

10        Petitioner claims that the Parole Board's determination that Petitioner was unsuitable for

11  parole based on several unchanging factors, such as his commitment offense and prior criminal

12  history, violated his due process rights because his sentence of 25 years to life with parole is

13  effectively turned into a sentence of 25 years to life without parole.  (Doc. No. 1 at 27-28.)  The

14  record reflects some evidence to support the Board's determination that Petitioner is not

15  presently suitable for parole, and therefore the Court denies the Petition in this ground.

16        California law provides several factors for the Parole Board to consider when

17  determining if a prisoner is suitable for parole.  Cal. Penal Code § 3041(b) states that a parole

18  date shall be set unless "[the Board] determines that the gravity of the current convicted

19  [offense], or the timing and gravity of current or past convicted [offenses], is such that

20  consideration of the public safety requires a more lengthy period of incarceration."  Moreover,

21  Cal. Code. Regs. tit. 15, § 2402 provides other factors for consideration of parole suitability,

22  including the commitment offense, previous record of violence, unstable social history,

23  psychological factors, and institutional behavior.

24        When reviewing a state parole board's parole suitability determination, courts cannot

25  speculate about what might occur in future parole proceedings; rather, federal habeas review

26  is limited to the record presented.  Sass v. California Bd. Of Prison Terms, 461 F.3d 1123, 1129

27  (9th Cir. 2006).  The United States Supreme Court in Superintendent v. Hill, 472 U.S. 445

28  (1974), stated that some evidence must be present in the record to support a revocation of good

1    time credits. 472 U.S. at 454. "Some evidence" does not require a re-examination of the entire

2    record or a re-evaluation of the credibility of witnesses, but merely looks to see if there is any

3    evidence that supports the underlying decision. Id. at 455-56. Respondent contends that the

4    "some evidence" standard is inapplicable because Hill pertained to good-time credits, whereas

5    the present case pertains to setting a parole date, and therefore Hill does not constitute well-

6    established Supreme Court precedent under 28 U.S.C. § 2254. (Doc. No. 17 at 5.) The Ninth

7    Circuit has rejected this argument, noting that while the "some evidence" standard may have

8    been developed in the context of good-time credits in Hill, the standard is applicable to the

9    parole process as well. Sass, 461 F.3d at 1128-29.

10        The record reflects some evidence to support the Board's determination that Petitioner

11   is not presently suitable for parole. The Board cited several reasons for denying Petitioner a

12   parole date, including multiple disciplinary infractions at the prison, some of which were violent

13   in nature; the commitment offense; the callous disregard in which the crime was carried out;

14   a past history of escalating criminal activity; failed previous attempts by society to correct

15   Petitioner's criminal behavior; and the need for further psychological evaluation. (Doc. No. 1,

16   App. G at 81-82.) Moreover, the Parole Board suggested to Petitioner that he get self-help,

17   remain discipline free, earn positive chronos, and receive a new psychological evaluation.

18   (Doc. No. 1, App. E). The record clearly demonstrates that the Board's decision to deny parole

19   was not based solely on static factors related to the crime, but was based on further behavior

20   while incarcerated.

21        Petitioner contends that he has a presumptive right to parole under Cal. Penal Code §

22   3041, and therefore a higher standard is required to deprive him of that presumptive right.

23   (Doc. No. 1 at 27-28.) Petitioner claims that the Board's decision must be based on good cause

24   or a preponderance of the evidence standard, as outlined in Cal. Code Regs. tit. 15, § 2450.

25   (Doc. No. 1 at 29.) However, Cal. Code Regs. tit. 15, § 2450 pertains to the revocation or

26   rescission of a parol date, not the process of determining when the parole date should be in the

27   first instance. Moreover, both Cal. Penal Code § 3041(b) and Cal. Code. Regs. tit. 15, § 2402

28   place limitations on granting parole. The statutory language, read as a whole, supports the

1    California Supreme Court's reading that the mandatory language of the statute is qualified and

2    not absolute.  In Re Dannenberg, 34 Cal. 4th at 1087.  Petitioner's present parole denial was

3    supported by some evidence in the record, and therefore the Board's decision, as guided by

4    relevant statutes and regulations, was neither arbitrary nor capricious.

5           Accordingly, the Court denies the Petition on this ground.

6    **C.    Delayed Parole Hearing.**

7           Additionally, Petitioner claims that his due process rights were violated when the Parole

8    Board failed to timely schedule his original parole hearing one year before he was eligible for

9    parole pursuant to Cal. Penal Code § 3041(a).  (Doc. No. 1 at 4.)  Cal. Penal Code § 3041(a)

10   states that "[o]ne year prior to the inmate's minimum eligible parol release date a panel [of

11   commissioners] shall ... meet with the inmate and shall normally set a parole release date ...."

12   Petitioner's argument is premised on the mandatory language in the statute, and contends that

13   such mandatory language creates a liberty interest protected by due process.  (Doc. No. 1 at 23.)

14          Provided that an inmate's conviction is valid, the inmate has been constitutionally

15   deprived of his liberty, and there is no constitutional right to be released prior to the expiration

16   of the valid sentence.  Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 441 U.S.

17   1, 7 (1979).  While the Court in Greenholtz found a constitutionally protected liberty interest

18   in the Nebraska statutory scheme, the Court specifically noted that statutory schemes have

19   unique structures and language, and therefore any determination of a liberty interest should be

20   done on a case-by-case basis. 442 U.S. at 12.  Cal. Penal Code § 3041(b) states, "The panel or

21   board shall set a release date" unless it determines that certain considerations warrant a longer

22   incarceration period.  See also In Re Dannenberg, 34 Cal. 4th 1061, 1087 (Cal. 2005) (noting

23   that the mandatory language of Cal. Penal Code § 3041 is qualified and not absolute).   In

24   McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002), the Ninth Circuit Court of Appeals noted

25   that Cal. Penal Code § 3041(b) created a constitutionally protected liberty interest because of

26   the mandatory language used.  306 F.3d at 902.  See also Sass v. California Bd. of Prison

27   Terms, 461 F.3d 1123, 1128 (9th Cir. 2006).

28          When there is a protected liberty interest at stake, federal courts examine whether there

are adequate procedural protections to satisfy due process.  See Wilkinson v. Austin, 545 U.S. 209, 224 (2005).  The Court in Wilkinson noted that due process requirements are flexible, not rigid, and may vary based on the particular situation in question.  545 U.S. at 224 (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  The United States Supreme Court observed in Greenholtz that the due process afforded to protected liberty interests under the Fourteenth Amendment, at least in the context of parole-release determinations, does not extend beyond the opportunity to be heard and to be notified of adverse decisions.  442 U.S. at 16.

Petitioner requested an attorney for his hearing and the opportunity to review his central file prior to the hearing.  (Doc. No. 1, App. B, C.)  The hearing was later rescheduled. Petitioner was notified in writing in advance of his hearing date (Doc. No. 1, App. D), was represented by counsel at his hearing (Doc. No. 1, App. G), was provided the opportunity to review his file (Doc. No. 1, App. G), and was notified orally and in writing of the denial of his parole (Doc. No. 1, App. E, G).  The Court concludes that Petitioner's liberty interest was adequately protected under due process.

Moreover, Petitioner has not shown that he suffered substantial and injurious prejudice from rescheduling his original eligibility hearing.  See Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)).  The Board's denial of a parole date was based on several factors that occurred well in advance of the originally scheduled hearing, including prison disciplinary infractions that dates back several years, some of which were violent in nature.  Whether Petitioner had his hearing in September 2005 or May 2006, the Board would have considered these factors and, as is evident from the Board's May 2007 decision, would have denied a parole date anyway.  Because Petitioner cannot show that a delay in scheduling caused prejudice, the Court denies the Petition on this ground.

///

///

///

///

///

**Conclusion**

For the reasons stated above, the Court DENIES the Petition for Writ of Habeas Corpus.

The Court also dismisses Petitioner's motion to reject Respondent's Opposition as untimely, and further dismisses Petitioner's motion for sanctions against Respondent.

IT IS SO ORDERED.

DATED:   June 24, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.

08-cv-01120-H-CAB (HC)